## JOE ESTES v. STATE.

No. A-3176.   Opinion Filed October 15. 1918.   On Rehearing. December 7, 1918.

### (176 Pac. 85.)

EVIDENCE—Accomplice Testimony—Sufficiency of Corro oration. In a prosecution for assault with intent to kill. the evidence considered, and **held,** that the testimony of an accomplice was sufficiently corroborated by testimony tending to connect the defendant with the commission of the offense.

*Appeal from District Court, Garvin County;*
*F. B. Swank, Judge.*

Joe Estes was convicted of assault with intent to kill, and he appeals.  Affirmed.

*Stanley & Osborn,* for plaintiff in error.

*S. P. Freeling,* Atty. Gen., and *R. McMillan,* Asst. Atty. Gen., for the State.

ARMSTRONG, J.  The plaintiff in error, Joe Estes, was convicted in the district court of Garvin county at the May, 1917, term on a charge of assault with intent to kill, and his punishment fixed at imprisonment in the state penitentiary for a term of ten years.  Seeking a reversal of this judgment of conviction, he has brought an appeal to this court, and urges one error only in the brief. That is, that the testimony of the accomplice, George Rich, was not sufficiently corroborated, as provided by law, to warrant the verdict of the jury and support the judgment of the trial court.

The information upon which the plaintiff in error was tried charged him, jointly with Ruff Estes and George Rich, with shooting at J. R. Robertson, on the 11th day of March, 1917, in Garvin county.  The record indicates that Joe and Ruff Estes were brothers; that George Rich was a neighbor living in the community; that Joe Estes was engaged in the illicit sale of intoxicating liquor and had been arrested by Robertson, who was a deputy sheriff, for violating the prohibitory liquor law; that Robertson also acted in conjunction with the United States officers in arresting Estes and bringing him to trial for violating the federal prohibitory law.  The evidence on behalf of the state tended to show that on the night of the 11th of March, 1917, George Rich and Ruff Estes went to the

home of J. R. Robertson, at the suggestion of Joe Estes, called Robertson out of his house, and shot at him.

George Rich testified at the trial on behalf of the state and detailed fully the circumstances of the shooting and connection of the plaintiff in error, Joe Estes, therewith. It appears from this testimony: That he had no ill will or grudge against the injured party, Deputy Sheriff Robertson; that he was friendly with him; that he was also friendly to Joe and Ruff Estes. That on numerous occasions the Estes brothers had endeavored to induce him to kill Robertson. That on the day the offense was committed he met the Estes brothers and they induced him to drink with them; that he got very drunk. That after he had become intoxicated the Estes brothers began to insist that Robertson should be killed that night and asked him to get a shotgun and go with Ruff Estes to perpetrate the crime. He finally agreed to do so and secured a shotgun belonging to some relatives and started on the trip. He met Ruff Estes by appointment between 9 and 10 o'clock at the home of Joe Estes. When he announced his presence, Joe Estes came out of the house and brought a pistol which he gave to Ruff Estes and told them to hurry along and get through with their work. That after the shooting he returned to Joe Estes' house and reported that he had killed Robertson. That Joe Estes gave him some money and told him he would hand him the other in a few days. He went on home and hid the shotgun in the barn. The next day he was arrested and placed in jail on this charge, and within a short time confessed his connection with the offense to the county attorney and implicated the plaintiff in error, Joe Estes, and his brother Ruff.

A number of witnesses testified to facts supporting the statement of the accomplice Rich, in many of the minor details, to the effect that he was drinking with the Estes boys and became intoxicated during the afternoon and was seen with them riding a horse which he testified was ridden by him on the night the offense was perpetrated. Joe Estes testified in his own behalf and denied all the incriminating facts testified to by Rich. Buster Connor, 19 year old boy, living in the same neighborhood, testified that he was at the home of Joe Estes between 9 and 10 o'clock on the night the offense was committed, and that George Rich came to the house and called for Estes, and that Estes got up on being told that George Rich was at the gate and desired to see him, walked across the room and put two pistols in his pocket, and went out to where Rich was; that, when he returned, he brought one pistol and put it down on the table. Estes admitted taking two pistols and leaving the house, but he said he went out to meet a man to whom he had sold whisky a night or two before, and who had pledged him a pistol to secure payment; and that his purpose was to return the pistol to the owner and secure payment for the whisky sold. Lillie Robertson, a daughter of the injured party, testified that she recognized George Rich as one of the persons who was in their yard and made the attempt to take the life of her father on the night of the 11th of March.

Wash Graham testified that he was at the home of Joe Estes on the night the offense was committed; that he saw the Estes brothers drinking with George Rich; that he was present at night when Joe Estes left the room and returned. Much testimony was introduced on behalf of the state tending to show ill feeling on the part of the

plaintiff in error against the injured party and his expressed desire to have him killed because he was a vigilant officer and interfering with his illicit whisky business. The fact that there is no question urged as ground for reversal in this judgment, except the failure of the state to sufficiently corroborate the testimony given by the · accomplice, has caused us to read and re-read this record carefully. The story told by the accomplice is straightforward and carries with it convincing elements of truth. We find it impossible to read the record without reaching the unbiased conclusion that the plaintiff in error is guilty, and it is our judgment that the testimony of the accomplice is sufficiently corroborated to comply with the statutes. His close association with the Estes brothers; the fact that he was drinking with them and drunk with them on the day of the homicide; that he borrowed the gun used, as testified to by him, and that it was found where he said he hid it; that he was at the home of Joe Estes immediately prior to the perpetration of this crime; that Estes without having first spoken to him, and upon being told that he was at the gate, got up, took the pistols, and went out and returned with only one of them; and many other incriminating facts and circumstances—are sufficient to connect this plaintiff in error with the conspiracy to murder Robertson, as charged.

The court fairly and impartially submitted the issue to the jury, and the jury was called upon to determine whether or not the incriminating facts were sufficient to support the story of the accomplice and to warrant a conviction. If they had accepted the theory of the plaintiff in error that he was giving the revolver to some one and collecting money for the whisky sold, and had not believed the many incriminating facts testified by other witnesses,

they should have acquitted the plaintiff in error; but the jury, who saw and heard all the witnesses testify upon the close points in this cause, determined the issues adversely to his contentions, and we are impelled to the conclusion that their verdict is well founded and that their judgment should stand because it is warranted by the evidence and complies with the law.

DOYLE, P. J., and MATSON, J., concur.

### ON REHEARING.

PER CURIAM. On rehearing we are asked to modify the judgment and sentence by reducing the punishment to imprisonment for three years. It appears that this defendant, after he was convicted, was not able to make an appeal bond, and was committed to the penitentiary pending the determination of his appeal; that he has now served about two years of his term; that his age is about 30 years, and he has a wife and one child that have always depended on him for support, and since his incarceration in the penitentiary they have depended upon the charity of his relatives for maintenance and support; that about seven years ago, as the result of an accident, the defendant's right leg was amputated near the hip, which makes him practically unable to perform any manual labor, and that his health has been seriously impaired by imprisonment. It also appears that the punishment of the principal—that is, the man who fired the shot—was only a term of two years.

In view of these facts we are inclined to think the punishment disproportionately severe, and that imprisonment in the penitentiary for the term of five years will answer all the just purposes of punishment. For the reasons stated, the term of the sentence will be reduced

from ten years to five years, and, as thus modified, the judgment is affirmed.